UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONICA MELISSA MILLER,

    Plaintiff,                          Civil Action No. 15-11345

        v.                         District Judge DAVID M. LAWSON
                                     Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

### **REPORT AND RECOMMENDATION**

    Plaintiff Monica Melissa Miller ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross-motions for summary judgment.  Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons discussed below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On July 11, 2012, Plaintiff applied for DIB and SSI, alleging disability as of March 14, 2012 (Tr. 153, 159). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 25, 2013 in Oak Park, Michigan (Tr. 29). J. William Callahan, Administrative Law Judge ("ALJ") presided. Plaintiff, represented by attorney Beth Versical, testified (Tr. 32-59), as did Vocational Expert ("VE") Pat Silver (Tr. 60-70). On November 18, 2013, ALJ Callahan found Plaintiff not disabled (Tr. 20-25). On February 10, 2015, the Appeals Council denied review (Tr. 1-6). Plaintiff filed suit in this Court on April 13, 2015.

## BACKGROUND FACTS

Plaintiff, born July 31, 1980, was 33 when ALJ Callahan issued his decision (Tr. 25, 153). She completed high school and received training as a medical assistant (Tr. 183). She worked previously as a fast food worker and store manager (Tr. 184). Her application for benefits alleges disability as a result of arteriovenous malformation ("AVM")[1], weakness, fatigue, status post cerebrovascular accident ("CVA")[2] (1995), foot drop, bladder problems,

---

[1] AVMs are defined as "defects in the blood vessels of the circulatory system." http://www.healthline.com/health/arteriovenous-malformations#Symptoms4. (Last visited April 18, 2016). AVMs in the brain can cause bleeding in the skull, seizures, headaches, confusion, memory lapses, and hallucinations. *Id.*

[2] A CVA is more commonly referred to as a stroke. http://www.healthline.com /health/cerebrovascular-accident #Overview1. (Last visited April 18, 2016).

and hand and foot cramping (Tr. 182).

    **A.    Plaintiff's Testimony**

Plaintiff offered the following testimony.

She lived in a condominium in Shelby Township, Michigan with her boyfriend (Tr. 32). She was single and did not have children (Tr. 33). Her boyfriend supported her (Tr. 33). She worked until March, 2012 as a store manager at Subway at which time she was fired for stealing over $25,000 from her employer to pay for her addiction to prescription pain killers (Tr. 33-34, 37). Her earlier work at Burger King required her to prepare food (Tr. 35). She had attended "a few years of college" but did not have a focus area (Tr. 34). She completed nine months of training for a medical assistant certificate but had not worked in that field (Tr. 34).

Plaintiff stood 5'1" and weighed around 180 pounds (Tr. 36). She had gained approximately 20 pounds in the past year (Tr. 36). She experienced pain in her lower back, hip joints, knees, and ankles (Tr. 38). She treated with a podiatrist for the ankle pain and a physician for the back pain (Tr. 39). Her condition had slightly worsened in the past year (Tr. 41).

Plaintiff's work as a Subway manager required her to stand most of the day, use a cash register, go to the bank, and hire and fire subordinate employees (Tr. 42). The manager job did not require her to perform any lifting or carrying (Tr. 42). She would be unable to return to the position due to the need to stand for long periods (Tr. 43). She had not seen a

physician since March, 2012 and could not remember the last time she received a physical checkup (Tr. 45). Following her March, 2012 termination, she received substance abuse treatment counseling and attended AA meetings (Tr. 45). She was sentenced to one year of probation for embezzlement (Tr. 46). She denied the current use of any medication, but noted that before her termination she was taking bladder control medication (Tr. 47). Due to bladder problems, she required the use of a bathroom every 90 minutes (Tr. 48). Her work abilities were also compromised by left arm problems and concentrational deficiencies (Tr. 50). She had not received physical therapy since her 1995 CVA and had never received treatment for concentrational problems (Tr. 50). She continued to perform upper extremity physical therapy exercises (Tr. 51). Her podiatrist had addressed the ankle problems by giving her a shoe insert and an ankle brace (Tr. 52). She had not worn the brace since working at Subway (Tr. 53). She experienced problems typing due to hand cramping (Tr. 53).

In response to questioning by her attorney, Plaintiff testified that her body pain had become gradually worse since her March, 2012 termination due to refraining from prescription pain medication and the worsening of her condition (Tr. 56). Her pain also caused concentrational problems (Tr. 56). She required breaks between household chores (Tr. 56). She stated that was unable to obtain treatment due to lack of money and health insurance (Tr. 56). She experienced fatigue and irritability due to sleep disturbances (Tr. 57). She reported that she was unable to lift significant weights with her left hand and

needed to use the bathroom every hour (Tr. 57). She testified that she would be unable to perform a sit-down job due to lower back pain and leg cramping and swelling (Tr. 58). She reported that she required position changes every 30 minutes (Tr. 59). In response to additional questioning by the ALJ, Plaintiff stated that her mother paid for the Tylenol and counseling services (Tr. 59).

      B.     **Medical Evidence**

### 1. Treating Sources

In March, 2004, Lucia Zamorano, M.D. referred Plaintiff for a physical therapy evaluation related to the condition of cervical arteriovenous malformation ("AVM") (Tr. 233). The same month, an MRI of the cervical spine showed that the condition of AVM was stable (Tr. 242). In October, 2004, Dr. Zamorano noted that Plaintiff had "progressively improved her balance" since 2001 treatment for AVM (Tr. 238). Dr. Zamorano noted that Plaintiff was currently taking Detrol for bladder control problems (Tr. 238). In January, 2005, an MRI of the brain showed an abnormal cord signal resulting from AVM (Tr. 227). The same month, Plaintiff underwent surgery for treatment of "a very high flow" AVM (Tr. 225). April, 2005 neurological records note an ataxic gait (Tr. 237). A May, 2005 MRI of the head and cervical spine showed that the condition of AVM was stable (Tr. 236).

May, 2010 treating records by podiatrist John Arsen, D.P.M., note a left drop foot and that Plaintiff was able to walk more easily with an Ankle Foot Orthosis ("AFO") device (Tr. 244). A July, 2011 ultrasound of the kidneys showed the presence of renal cysts (tr. 247).

### 2. Non-Treating Sources

A July, 2012 work assessment by Michigan Rehabilitation Services noted vocational impairments related to impulsivity, physical limitations, and "below average concentration and memory" (Tr. 257). Plaintiff's "severe difficulty concentrating," walking limitations, and left upper and lower extremity weakness were deemed "impediment[s] to employment" (Tr. 258).

In October, 2012, Lasmi Manyam, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of a 1995 CVA resulting in severe headaches, and extremity weakness (Tr. 248). Plaintiff reported good results on the right side from physical therapy but noted continued extremity weakness and a left foot drop (Tr. 248). Plaintiff reported level "seven" pain on a scale of one to ten but denied memory problems (Tr. 248). She reported "overactive bladder" requiring bathroom breaks six times a day (Tr. 249). Plaintiff admitted to a former, long-term addiction to Vicodin (Tr. 249).

Dr. Manyam observed an ataxic gait, left hand weakness, lumber spine limitations due to lower extremity weakness, an inability to squat, and left foot drop requiring the use of an AFO device (Tr. 250). Dr. Manyam found that Plaintiff's ability to stand, walk, carry, lift, or climb was "markedly" limited (Tr. 250). She noted Plaintiff's report of lower back, knee, and hip pain resulting from mild degenerative arthritis (Tr. 250). Dr. Manyam found that Plaintiff required the use of a cane to reduce pain and to avoid falls (Tr. 255).

The same month, Tariq Mahmoud, M.D. performed a non-examining assessment of Plaintiff's residual abilities, finding that she was limited to lifting 10 pounds and standing or walking for two hours and sitting for six hours in an eight-hour workday (Tr. 98). Dr. Mahmoud also found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 98-99).

In February, 2013, Employment Development Manager Elaine Palmeri noted that Plaintiff was candid about her past substance abuse and its repercussions (Tr. 260-261, 271). Ms. Palmeri recommended "volunteering as a positive to add to her work experience" (Tr. 261). Plaintiff expressed an interest in working in the medical field (Tr. 273).

### 3. Evidence Submitted After the November, 2013 Administrative Opinion[3]

June, 2010 treating records by Jennifer Prohow, D.O. state that Plaintiff was prescribed Ibuprofen, Flexeril, and Darvocet for lower back pain (Tr. 279). Dr. Prohow's October, 2012 records state that Plaintiff reported ongoing symptoms of left drop foot, left-side weakness, and walking and balance problems but had not been able to obtain neurological treatment since 2005 (Tr. 277).

---

[3] These records were not among those considered by the ALJ (Tr. 5, 274-281). Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." § 405(g). Plaintiff does not cite the newer material, much less argue that it provides a basis for remand.

### C. Vocational Expert Testimony

VE Pat Silver classified Plaintiff's past jobs as a fast food worker as unskilled and exertionally light and fast food manager, skilled/sedentary[4] (Tr.61). The VE stated that her testimony would be consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") and that she would advise the ALJ of any conflicts with DOT "and the basis of [her] opinion" (Tr.60-61). ALJ Callahan then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience (Tr. 62) with the following limitations:

> [Exertionally] light, no climbing, and only incidental walking or standing totaling a maximum of two hours a day. No limitations on sitting. Only incidental climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling. And I'll define incidental as one to two times every 15 minutes. No climbing ladders, ropes or scaffolds (Tr. 61).

The VE testified that the above restrictions would allow for the exertionally light, unskilled work of a parking lot attendant (2,100 jobs in the local economy); office helper (1,000); and various assembly positions (Tr. 2,500) (Tr. 63-64). The VE testified that if the

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

same individual were limited to sedentary work, she could perform the unskilled work of a surveillance monitor (1,000); bench assembler (1,700); and telephone information clerk (1,300) (Tr. 64). The VE stated that if the ability to reach, handle, finger, or twist with the hands were limited to an occasional basis, all of the above jobs would be impacted except for the surveillance system monitor position (Tr. 66).

In response to questioning by Plaintiff's attorney, the VE testified that the first three jobs cited would require lifting up to 20 pounds (Tr. 67). The VE stated that her job testimony assumed two 15-minute breaks and one 30-minute break each eight-hour workday (Tr. 68). Aside from the scheduled breaks, the VE testified that being off-task for up to 10 percent of the workday was not work preclusive (Tr. 68). The VE noted that the need to be off-task for five minutes every hour would preclude the parking lot attendant job, but would not affect the "self-paced" assembly jobs (Tr. 69). The VE testified that the need to elevate both legs for two hours each workday would be work preclusive (Tr. 70).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Callahan found the severe impairment of "status post cerebrovascular accident with an arteriovenous ('AV') malformation" but that the condition did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional limitations:

> [I]ncidental standing or walking for not more than 5-10 minutes at a time for up to 2 hours; incidentally using ramps or stairs just once or twice for not more

than 15 minutes; occasional reaching, twisting, handling, or fingering with the hands; and no ladders, ropes, scaffolds, or foot controls; where she could be off task up to 15% of the time with normal breaks (Tr. 23).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to return to any of her past relevant work, she could perform the job of surveillance system monitor (Tr. 25).

The ALJ discounted the allegations of disability, noting that Plaintiff had been employed "since 1995 when she had her stroke" and stopped working in March, 2012 when she was discharged for embezzling from her employer (Tr. 24). He noted that Plaintiff's alleged need for frequent bathroom breaks was undermined by her ability to sit through the 75-minute administrative hearing (Tr. 24, 31, 71). The ALJ rejected Plaintiff's claim that she could not afford needed medical treatment, noting that she was able to obtain "$45 a week for substance abuse counseling. . . ." (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984

## ANALYSIS

### The ALJ's Step Three Findings

Plaintiff takes issue with the ALJ's Step Three determination that she did not meet or medically equal a listed impairment. *Plaintiff's Brief*, 8-12 (*citing* Tr. 23), *Docket #16*. She argues that the ALJ's one-sentence finding that "[t]he record does not contain the requisite clinical and objective findings that would meet or equal any Listings" fails to mention the Listing considered, much less the criteria for the Listing or a rationale for the finding that she was not disabled at Step Three. *Id.* (*citing* Tr. 23). In response, Defendant argues that the ALJ's error was harmless, given that Plaintiff "has not presented evidence that her impairment met or equaled any listed impairment." *Defendant's Brief,* 7-11 (*citing Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. November 17, 2014)), *Docket #17*.

At Step Three of the administrative sequence, a claimant meeting or medically equaling "the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)). While "[t]he Sixth Circuit 'does not

require a heightened articulation standard from the ALJ at Step Three of the sequential evaluation process' *Grohoske v. Comm'r of Soc. Sec.,* 2012 WL 2931400, *3 (N.D.Ohio, July 18, 2012)," it "has made clear the step-three 'reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review.'" *Brock v. Colvin,* 125 F.Supp.3d 671, 672 (N.D.Ohio, 2015)(*citing Reynolds,* 424 Fed.Appx. at 414). Nonetheless, the Court may "overlook the ALJ's failure to articulate his Step Three findings" if the error is found to be "harmless in nature." *M.G. v. Comm'r of Soc. Sec.,* 861 F.Supp.2d 846, 859 (E.D.Mich.2012).

Both parties agree that Listing 11.04B (*Central nervous system vascular accident*) is applicable. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04. To meet subpart B, a claimant must show that the condition creates "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" as described in Listing 11.00C. Listing 11.00C states that "persistent disorganization of motor function" may take the form of "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . ." *Id.* Listing 11.00C states further that the motor function limitations "frequently provides the sole or partial basis for decision in cases of neurological impairment," noting that the "assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms."

In certain cases, an insufficiently articulated Step Three finding can be cured by a discussion of the evidence supporting non-disability at earlier or subsequent steps in the sequential analysis. *See Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411, (6th Cir. January 31, 2006). In contrast here, the Court is unable to discern a rationale for the Step Three finding anywhere in ALJ's determination. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration*, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995).

The Step Three finding is not only truncated, but inconsistent with the ALJ's subsequent discussion. It is possible (but not certain) that the ALJ's one-sentence Step Three finding was drawn from Dr. Mahmoud's non-examining conclusion that Plaintiff did not meet Listing 11.04B (Tr. 23, 87). Dr. Mahmoud's finding that Plaintiff did not meet the Listing might arguably constitutes evidence in support of the Step Three finding. Dr. Mahmoud's conclusion that Plaintiff did not meet Listing 11.04B appears to be based on his finding that while she had significant lower extremity problems, she did not experience any manipulative limitations (Tr. 89, 98-100). Without more, it could be argued that the ALJ's failure to state a Listing or provide a rationale at Step Three was harmless error.

However, the ALJ's RFC differs significantly from Dr. Mahmoud's findings. In contrast to Dr. Mahmoud's findings, the ALJ acknowledged ongoing "neurological deficits" of both the upper and lower extremities resulting from the CVA (Tr. 24). He found the

presence of significant upper extremity impairment limting Plaintiff to occasional reaching, twisting, handling, and fingering in both hands (Tr. 23). The ALJ's finding of upper extremity limitations is also supported by Dr. Manyam's consultative observation that Plaintiff experienced marked limitations in carrying which limited her to carrying only five pounds (Tr. 250, 254). The ALJ's finding that Plaintiff experienced hand cramping and other upper extremity limitations resulting from the 1995 CVA, is not inconsistent with a finding of "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" as required to meet the Listing 11.04B.[5] As such, an assessment of Plaintiff's "degree of interference with locomotion and/or interference with the use of fingers, hands, and arms" in determining whether she meets Listing 11.04B is particularly critical. § 11.00C. Given that the ALJ acknowledged both upper and lower extremity limitations, a remand for consideration and articulation of whether Plaintiff meets Listing 11.04B is required. Plaintiff's history of substance abuse and its consequences, while relevant to the credibility determination, does not obviate the need for a proper Step Three analysis and a rationale for why her longstanding condition resulting from the 1995 CVA does not meet a a listing.

---

[5] Plaintiff's lower extremity limitations, such as an ataxic gait, are undisputed by the treating, consultative, and non-examining sources.

For this reason, a remand is appropriate. However, Plaintiff has not presented an "overwhelming" case for disability benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994). Further, because it cannot be said that "all essential factual issues have been resolved," a remand for further fact-finding, rather than an award of benefits, is appropriate. *Id.*

## **CONCLUSION**

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings consistent with this Report, and that Defendant's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: April 21, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 21, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen